Filed 3/27/13  P. v. Kester CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Yuba)**

----

| | |
|---|---|
| THE PEOPLE, | C070665 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF11-242) |
| v. | |
| DONALD EARL KESTER, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Donald Earl Kester has filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Finding no arguable error that would result in a disposition more favorable to defendant, we affirm the judgment.

We provide the following brief description of the facts and procedural history of the case.  (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

1

Defendant was charged with three counts of committing lewd and lascivious acts on a child under the age of 14. (Pen. Code, § 288, subd. (a).) Two counts were alleged to have occurred between March 18 and 19, 2011 (counts 1 and 2), and one count was alleged to have occurred between November 1, 2010 and March 18, 2011 (count 3).

Defendant waived his right to a jury trial and proceeded with a court trial. He also agreed to waive his right to confront and cross-examine three child witnesses, including the victim, and stipulated that the prior recorded multidisciplinary interview center interviews would be presented by way of DVD recording. The People agreed to seek a finding on only one of the charged counts.

The following facts were adduced at trial. Defendant lived alone in an apartment beginning in August 2010. His grandson, A.C. (age 11), and two granddaughters, E.K. (the victim, age nine) and M.K. (age seven), would spend the weekend visiting approximately twice a month. While there, the children would play video games and watch television. A.C. reported that defendant drank heavily during the visits. The children slept together in a bedroom separate from defendant.

Beginning in January 2011, E.K. began asking not to go to defendant's house and, on at least one occasion, was permitted to go to an aunt's house instead. However, on Friday, March 18, 2011, all three children were dropped off at defendant's house for the weekend. The children were to be picked up Saturday afternoon to go to a birthday party but were to go back to defendant's house afterwards.

The children arrived between 7:30 and 8:00 p.m. and, shortly thereafter, M.K. fell asleep in a chair in the front room. Defendant took her to the bedroom and returned to the front room. A.C. was playing video games as defendant and E.K. sat on the couch behind him and watched. Defendant had consumed four to five bottles of beer by this time. While A.C. played the game, defendant put his hand down E.K.'s pajama pants. At this point, A.C. turned around and saw defendant with his hand down E.K.'s pants.

2

A.C. and defendant looked at each other as defendant took his hand out of E.K.'s pants and reached for his beer. A.C. said defendant had a frightened look in his eyes.

A.C. continued playing his video games. When he turned around later, he saw defendant rubbing E.K.'s leg, outside of her clothing. E.K. felt nauseated and asked to call her mother. Defendant refused, telling her there was nothing her mother could do that he could not do. A.C. felt sick, having witnessed defendant touching E.K., and also asked to call his mother. Again, defendant refused.

Defendant told the children it was time to go to bed and they went into the bedroom they used when they visited defendant. Defendant then came in, while E.K. was asleep, removed her covers, and carried her back to the front room. He put on a movie and, while they were watching, he put his hand down her pants again. After the movie was over, he removed his hand and sent her back to bed.

The next day, when the children's mother picked them up for the party, she noticed both E.K. and A.C. acting unusually. E.K. was walking very slowly with her head bent down and avoiding eye contact. A.C. seemed rushed to leave defendant's apartment. When they got in the car, A.C. said she (mother) was going to be really upset and never let them go back to defendant's apartment, but A.C. did not give her a reason. They went to the store to pick up some items for the birthday party and A.C. then told his mother that he saw defendant pulling his hand out of E.K.'s pants. When asked, E.K. acknowledged that it had happened.

As a result, the children's mother took them directly to the police department where they spoke with officers. E.K. was examined and discovered to have a bruise around her vagina. A subsequent sexual assault exam revealed tissue damage in the vaginal area that would not be expected on a child absent sexual assault. The examiner concluded some form of fondling or touching of the vaginal area had occurred. This finding was consistent with the incident history the examiner had been provided.

3

E.K. was interviewed and revealed defendant had put his hand down her pants on previous occasions when the children were visiting at his apartment. Defendant had come into the children's room after they were asleep, carried her back to the front room and put his hand down her pants while they watched a movie. E.K. would tell him she just wanted to sleep but defendant would say, " 'I just want to have fun with you' " and " 'just let me do it and then you can go to sleep.' " E.K. said that, on each occasion, he touched her upper thigh. On the occasion that A.C. witnessed, she hesitated and then described defendant as having touched her front upper thigh and then moved his hand up to just under her bikini line.

Defendant denied ever having intentionally put his hand down E.K.'s pants or touching her inappropriately.[1] He admitted to tickling the child and said it was possible he had accidently put his hand in her pants or touched her vaginal area while doing so. Defendant admitted he was drinking beer the night of March 18, 2011. He also admitted to bringing E.K. back to the front room to watch a movie after sending the children to bed but, again, denied he put his hand down her pants as they watched. Defendant had made several statements to a friend while in jail about his preference for prepubescent girls, which were recorded and admitted into evidence, but he claimed his comments had been satire or mocking.

---

[1] Defendant was interviewed by police officers prior to his arrest. This conversation was recorded and the recording was admitted into evidence. The trial court's records do not contain a transcript of the recording and it is unclear if the trial court was provided with one at the trial. Defendant's appellate counsel has provided a transcript of the recording, prepared by his office, for the purpose of providing ease of reference. Although we deny his request to take judicial notice of said transcript, we appreciate the preparation and submission of the transcript for ease of reference. Consistent with our obligations under *Wende*, however, we have listened to the recording itself as part of our review of the record.

The trial court found defendant guilty of count 1 and dismissed the other counts on the People's motion. The matter was referred to the probation department for a sentencing report and a Penal Code section 288.1 report by a court-appointed psychologist.

On March 12, 2012, the trial court denied defendant's application for probation and sentenced him to the midterm of six years in state prison. The trial court imposed various fines and fees, including a $1,200 restitution fine and $6,210 in victim restitution. Defendant was awarded 319 actual days and 47 conduct days, for a total of 366 days of presentence custody credit. (Pen. Code, § 2933.1.)

Defendant appeals. Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days have elapsed, and we have received no communication from defendant.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.

BUTZ , J.

We concur:

RAYE , P. J.

BLEASE , J.

5